A. J. Dalton v. Commissioner.
Dalton v. Commissioner
Docket No. 50393.
United States Tax Court
T.C. Memo 1957-20; 1957 Tax Ct. Memo LEXIS 228; 16 T.C.M. (CCH) 96; T.C.M. (RIA) 57020; January 31, 1957
*228 R. D. Davis, Esq., Box 1239, Ashland, Ky., for the petitioner. John C. Calhoun, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined deficiencies in the petitioner's income taxes as follows: Year
Deficiency
1947
$ 21,222.30
1948
120,417.80 Certain adjustments made by the Commissioner were conceded to be proper or were not contested. The deductions, if any, allowable to the petitioner in 1948 for medical expenses and contributions will depend upon the recomputations of income in accordance with our decision. There are two issues for decision: (1) whether withdrawals made in 1947 and 1948 by the petitioner from corporations controlled by him constituted loans or taxable dividends, and (2) whether the petitioner is entitled to a deduction of $3,500 in 1948 for an alleged loss on an investment in a gas well. Findings of Fact Some of the facts and exhibits thereto are stipulated. They are found as stipulated and are incorporated herein by this reference. The petitioner, A. J. Dalton, is an individual who resides near Pikeville, Kentucky. He filed his individual income tax returns *229 for the years 1947 and 1948 with the collector of internal revenue for the district of Kentucky at Louisville, Kentucky. Prior to August 31, 1946 the petitioner was engaged in operating various truck mines, buying coal, operating mine commissaries, and selling coal, doing business as the Low Ash Coal Company. On September 1, 1946, he organized three corporations, Dalton Mines, Inc. to operate his truck mines; Dalton Stores, Inc. to operate mine commissaries; and Dalton Coal Sales, Inc., to buy and sell coal produced or purchased. The petitioner at all times owned or controlled more than 90 per cent of the capital stock of those three corporations. The opening entries in the books of the three corporations, which were not made until the fall of 1947, showed the following: ASSETS
Dalton Mines
Dalton Stores
Dalton Coal Sales
Cash
$ 26,085.92
$ 2,079.93
Accounts Receivable
24,862.53
990.66
$12,295.45
Inventory
15,445.55
Prepaid Insurance
3,112.72
Plant and Equipment
293,995.22
7,902.84
811.10
Total Assets
$348,056.39
$26,418.98
$13,106.55
LIABILITIES
Notes Payable
$ 51,813.88
Royalties Payable
11,144.15
Reserve for self-insurance
48,941.01
Reserve for depletion
78,324.51
Script outstanding
135.99
Unclaimed Wages
3,739.87
Total Liabilities
$194,099.41
CAPITAL
$153,956.98
$26,418.98
$13,106.55
*230 These opening entries did not reflect completely the assets and liabilities of the petitioner's sole proprietorship, which were to be transferred in their entirety to the three corporations. Within a few months after incorporation obligations of the sole proprietorship in the amount of $260,217.45 were paid by the petitioner. He withdrew $215,000 from Dalton Sales to apply against this indebtedness. Also, the reserve for self insurance and the reserve for depletion of Dalton Mines was overstated by $34,418.76 and $16,534.99, respectively (as shown by subsequent audit of the petitioner's income tax returns). The petitioner's accounts with Dalton Coal Sales and with Dalton Stores were each charged with $50,000 for stock in those companies. On September 30, 1948, Dalton Mines, Dalton Stores, and Dalton Coal Sales were consolidated into a company known as the Mountain States Coal Corporation. Dividends were credited to the petitioner's accounts in Dalton Mines, Dalton Stores, Dalton Coal Sales, and Mountain States Coal for the years 1947 and 1948 in the amount of $78,760. Likewise, salaries were credited to the petitioner's accounts in these companies for the years 1947 and 1948 *231 in the amount of $46,180. All of such income from dividends and salaries was reported by the petitioner in his individual income tax returns for 1947 and 1948, except $1,500 in salary for 1948, which was included by the Commissioner in computing the deficiency for 1948 and conceded by the petitioner to be a proper adjustment. The books of Dalton Mines showed that the petitioner made certain withdrawals from that corporation totalling $25,219.70, during 1947. This did not include the salaries or dividends paid by Dalton Mines to the petitioner during 1947. The books of Dalton Mines and Dalton Coal Sales showed that the petitioner withdrew $92,164.46 and $78,720 from those corporations, respectively, during 1948. These withdrawals did not include salaries and dividends paid by the corporations to the petitioner during 1948. The withdrawals by petitioner in 1947 and 1948 were not secured and they were not evidenced by a note. They did not bear interest. The earnings and profits of the corporations were sufficient to cover the withdrawals of the petitioner in 1947 and 1948. The dividends and salaries credited to the petitioner's account by the corporations in 1947 and 1948 were *232 used in whole or in part to offset the petitioner's withdrawals. The petitioner paid Mountain States Coal $77,000 in 1949 to apply against his withdrawals and by April 30, 1951 had completely repaid that corporation for the withdrawals he had made from its predecessors. The Commissioner determined that $25,100.30 * withdrawn by the petitioner from Dalton Mines in 1947, and $92,164.36 * and $66,519.05 * withdrawn by him from Dalton Mines and Dalton Coal Sales, respectively, in 1948, represented distributions of earnings or profits of those corporations and constituted income to him from dividends. In his petition the petitioner, among other things, alleges that the Commissioner's determination of tax for 1948 was in error because of "the disallowance of $3,500 investment in an unproductive gas well as a deduction from income of petitioner." The Commissioner did not disallow such deduction in his notice of deficiency, thus the petitioner raises *233 the issue in his petition. The withdrawals made by the petitioner in 1947 and 1948 were loans and not dividends. The petitioner has failed to show that he is entitled to a deduction of $3,500 in 1948 for loss resulting from his investment in an unproductive gas well. Opinion The first issue for consideration is whether withdrawals made by the petitioner in 1947 and 1948 from Dalton Mines and Dalton Coal Sales (corporations controlled by the petitioner) were dividends or whether they were loans as they purported to be. The issue presented here is purely factual. and is disposed of by our finding of fact. The nub of the question is whether the withdrawals were in fact loans at the time they were paid out; and the character of the withdrawals depends upon the petitioner's intent - whether he took the money for permanent use in lieu of dividends or whether he was then only borrowing. (C.A. 8, 1938), certiorari denied , rehearing denied . The weight of the evidence indicates that a debtor-creditor relationship existed between *234 the petitioner and the three corporations. There is a clear, convincing, and credible showing that there was both an intent and an obligation to repay the withdrawals made by the petitioner. During 1947 and 1948, $78,760 in dividends and $46,180 in salaries were credited to the petitioner's account with the corporations in addition to the withdrawals here in question. He reported and paid income taxes on these amounts, except for $1,500 in salary which was adjusted by the Commissioner in his notice of deficiency. These dividends and salaries were used in whole or in part to offset the petitioner's withdrawals. In 1949 the petitioner paid $77,000 to Mountain States Coal in repayment of the alleged loans. And by April 30, 1951 the petitioner had entirely repaid that corporation for the withdrawals he had made from its predecessors. These circumstances manifest the petitioner's intent to treat the withdrawals as loans. (D.C.Colo., 1955); ; . Furthermore, it is apparent that these repayments were made before the petitioner had any notice that *235 the Commissioner might determine that the withdrawals were dividends. There is no suggestion here of a tax avoidance scheme and the sizable dividends and salaries mentioned above which were reported and on which taxes were paid would tend to rebut any such suggestion. There seems to be only one reasonable explanation for the payments, namely, that the withdrawals were intended to be loans. A. J. Dalton, due to his age and health, was unable to testify in court. However, a deposition was taken in which he stated that he withdrew money from the corporations for his personal benefit, but that he had his bookkeeper credit his account with part of his salaries and other income in repayment of the advances he had received. He also stated that he did not consider that the withdrawals were dividends; and that he certainly would not have repaid the withdrawals if he had considered them as dividends. The Commissioner relies on the fact that there was no security for the amounts withdrawn and that the withdrawals were not evidenced by notes and did not bear interest. These elements weaken the petitioner's position, but the presence of these facts does not *236 conclusively show that the withdrawals were dividends. In re Ward and Carl L. White, both supra. There is nothing unusual about a corporation's loaning money to its sole stockholder without security, notes, or interest. The Commissioner also stresses that the petitioner has not shown that he had available assets with which to repay the withdrawals if they had been loans - a factor he claims was strongly relied upon by the courts in ; ; and (C.A. 2, 1944). The former two cases, where there was ability to repay, held that withdrawals by a stockholder were loans and not dividends, and the latter case, where there was not ability to repay, held contra. The availability of assets to repay withdrawals was only one of many factors involved in those cases and was by no means conclusive one way or the other. For example, in the Regensburg case four brother-stockholders who controlled a corporation withdrew money in unequal amounts for nearly 40 years until the withdrawals outstanding exceeded $3,000,000 which was not only more than the *237 value of the stocks they held but which as a practical matter constituted their only assets. The court thought that this manifested an intention of the brothers to treat the withdrawals as a distribution of corporate earnings and not as loans. We think the record adequately proves that a debtor-creditor relationship existed between the petitioner and the corporations and it appears that the transactions were in good faith. We hold that the withdrawals made by the petitioner in 1947 and 1948 were loans and not dividends. In view of this holding we need not consider the petitioner's alternative argument, which we understand to be, that there were sufficient credits erroneously not credited to his accounts with the corporations to offset the withdrawals which the Commissioner determined were dividends, so that the withdrawals were in effect nothing more than reimbursements to the petitioner of amounts owed him by the corporations. The second issue involves the petitioner's claim that he is entitled to a deduction in 1948 for $3,500 from an investment in an unproductive gas well. This loss deduction was not disallowed by the Commissioner in his notice of deficiency, but the issue *238 was raised by the petitioner in his petition. We hold that petitioner has failed to show that he is entitled to the deduction. The petitioner's bookkeeper testified that one of the corporations (she did not remember which) issued $3,500 in checks to McKinney to drill a gas well and that the petitioner never received any money from McKinney on any gas well. In his deposition the petitioner stated that he guessed he advanced three or four thousand dollars to McKinney in 1947 or 1948 to drill a gas well and that it was his understanding that it was a dry hole and further that he never got anything out of the money he advanced to McKinney. No documentary evidence of any kind was presented, not even the cancelled checks used to pay McKinney and there was not a bit of evidence to show that the investment became worthless in 1948. We have no choice but to hold that the petitioner has failed to show that he sustained a loss in 1948 from his investment in the gas well. Decision will be entered under Rule 50. Footnotes
*. Petitioner's actual withdrawals were slightly more than the amounts determined by the Commissioner, see facts supra. The variance is due to certain minor adjustments made when analyzing the petitioner's accounts with the corporations.↩